USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/30/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARVIND GUPTA,

                Plaintiff,

v.

HEADSTRONG, INC., GENPACT
LIMITED, and SECRETARY OF THE U.S.
DEPARTMENT OF LABOR,

                Defendants.

No. 17-CV-5286 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Before this Court is a motion to dismiss Plaintiff's *pro se* complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Headstrong, Inc. and Genpact Limited (collectively, "Headstrong" or "the Headstrong Defendants").[1] After reviewing the complaint, materials incorporated by Plaintiff, and the parties' submissions, the motion is granted.

## BACKGROUND[2]

In early 2006, Headstrong, an IT services company, hired Plaintiff Arvind Gupta, a citizen of India, as a non-immigrant worker. The United States Department of Labor ("DOL") certified the necessary Labor Condition Application, and United States Citizenship and Immigration Services ("USCIS") approved the required H-1B visa.[3] In November 2006, Headstrong notified Gupta that he would be terminated and, after November 28, did not assign him any work.

---

[1] Genpact is the parent company of Headstrong, and so they are referred to here as one entity.

[2] The Court assumes the parties' familiarity with the facts and with the Court's previous decision in *Gupta v. Headstrong, Inc.*, No. 12-CV-6652 (RA), 2013 WL 4710388, at *1 (S.D.N.Y. Aug. 30, 2013). The Court recites here only those facts relevant to the instant motion.

[3] The term "H-1B visa" derives from Section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act, which sets forth the requirements for this type of visa.

In May 2008, in response to Gupta's allegations that he had not received the full wages owed by Headstrong, Gupta and Headstrong entered into a settlement and release agreement. The agreement contained a comprehensive release of Plaintiff's claims against Headstrong, in which Gupta agreed to "release and forever discharge [Headstrong], [Headstrong's] parent organizations, affiliates, and subsidiaries" and employees, agents, partners, and other potential connected parties "of and from all . . . suits, actions, causes of actions, charges, complaints, grievances, judgments, damages . . . which [he] ever had, now ha[s], or which may arise in the future, regarding any matter arising on or before the date of [his] execution of" the agreement. Agreement at 2 (Dkt. 53-2). The agreement also explicitly released Headstrong from any claims related to alleged violations of public policy, federal, state, and local law, discrimination, various federal civil rights laws, the federal Fair Labor Standards Act, and more, as well as actions for relief such as "wages, back pay, bonus, severance pay, benefits," and other fines and damages. *Id.* at 3. Furthermore, Gupta agreed to a covenant "not to file a suit relating to any of the matters released." *Id.*

In exchange, Gupta received a $7,000 lump-sum payment and a release by Headstrong of any claims it may have had against him (with the exception of certain fraud, intellectual-property, and similar claims). *Id.* at 2, 5. Gupta agreed that such consideration was "sufficient consideration for the release," and that the agreement had "been reached by mutual and purely voluntary agreement of the parties, each of whom has been represented by its own attorneys." *Id.* at 4, 5. The parties to the agreement, by their signatures, demonstrated "their full agreement with, and understanding of" the agreement's terms. *Id.* at 5. The agreement further stated that it "may not be changed or altered, except by a writing signed by [Headstrong] and [Gupta]," that it "constitute[d] the entire agreement," and that New York law would apply to any resulting dispute. *Id.* at 5–6. The agreement further provided that Gupta was not "relying upon any oral or written

2

promise or statement made by anyone at anytime on behalf of [Headstrong]." *Id.* at 5. The agreement is notarized, signed by both parties, and dated May 8, 2008. *Id.* at 6–7.

Despite the agreement, Plaintiff filed a complaint with the DOL alleging that Headstrong had failed to pay him his full wages. What followed was a years-long process with the DOL's administrative authorities that finally resulted in a dismissal of Plaintiff's claims in June 2012 based on untimeliness. In August 2012, Plaintiff, proceeding *pro se*, brought suit in this Court against Headstrong and the DOL, seeking review of the DOL's decision and the wages he argued he was owed. In December 2012, Plaintiff entered into a stipulation and order of remand and dismissal with the DOL, in which the DOL agreed to give further review to Plaintiff's complaint. Headstrong was not a party to that stipulation and filed a motion to dismiss Plaintiff's complaint, which this Court granted without prejudice in light of Plaintiff's then-ongoing exhaustion of his administrative remedies. *See Gupta v. Headstrong, Inc.*, No. 12-CV-6652 (RA), 2013 WL 4710388, at *4 (S.D.N.Y. Aug. 30, 2013).

On January 21, 2015, the DOL determined that Gupta's complaint was timely and that Headstrong was indeed liable to him for $11,491.26 in back wages. The DOL also determined, however, that Headstrong had no remaining monetary liability because of the agreement's release of all claims. On January 26, 2017, the DOL's administrative review board affirmed the dismissal of Plaintiff's case, finding that the administrative law judge had not "erred in finding that the settlement extinguished all liability." Dkt. 1-3 at 3. The board noted that the settlement "included a release of all claims related to Gupta's employment." *Id.* at 4. The following month, the board denied Plaintiff's motion for reconsideration.

On March 16, 2017, Plaintiff filed this action in the Northern District of Illinois, asserting 20 counts relating to his employment with Headstrong and to the DOL's dismissal of his claims.

*See* Compl. (Dkt. 1). In July 2017, the case was transferred to this Court on venue grounds. The DOL then answered the complaint. *See* Dkt. 71. The Headstrong Defendants filed a motion to dismiss, and Plaintiff responded. *See* Dkts. 52–54, 74, 77.

## LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In the case of a pro se litigant, the court reads the pleadings leniently and construes them to raise 'the strongest arguments that they suggest.'" *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)).

## DISCUSSION

### I. Application of the Agreement

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *see also* Fed. R. Civ. P 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). A document that is "integral" to the complaint may also be considered, though "[i]t must also be clear that there exist no material disputed issues of fact regarding the [document's] relevance," authenticity, and accuracy. *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). In reviewing an integral document, courts "are not constrained to accept the allegations of the complaint in respect of the construction of" the document, but courts should still "strive to resolve any contractual ambiguities

4

in [the plaintiff's] favor." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

All of Plaintiff's current claims arise from his various pre-May 2008 employment agreements with Headstrong. Of primary importance to this case, then, is whether the Court may properly review on a motion to dismiss the May 2008 settlement and release agreement that bars any and all claims "regarding any matter arising on or before the date" of the agreement. Agreement at 2. The Court concludes that it may. The agreement is plainly integral to the complaint, as Plaintiff in his complaint relies on an extensive discussion of it to make his various claims and to attempt to assert defenses to its validity. *See, e.g.*, Compl. at 15, 53–62. Gupta also attaches to his complaint the DOL documents that detail the agreement and deny his claims on the basis of its terms. *See* Dkts. 1-3, 1-4. Plaintiff thus concedes the relevance of the agreement, and he does not challenge its accuracy or authenticity.

Plaintiff nonetheless argues that the agreement is not grounds for granting the motion to dismiss. But "[i]t is appropriate to grant a motion to dismiss on the basis of a binding release agreement where, as here, the terms of the agreement are clear and unambiguous." *2 Broadway L.L.C. v. Credit Suisse First Boston Mortg. Capital L.L.C.*, No. 00 CIV. 5773 GEL, 2001 WL 410074, at *6 (S.D.N.Y. Apr. 23, 2001). Under New York law, "a release is governed by principles of contract law and a court should enforce a valid release by its clear terms." *Ladenburg Thalmann & Co. v. Imaging Diagnostic Sys., Inc.*, 176 F. Supp. 2d 199, 204 (S.D.N.Y. 2001). Federal courts likewise have "articulated a strong policy in favor of enforcing settlement agreements and releases." *Levine v. Bd. of Educ. of City of New York*, 1998 WL 386141, at *2 (2d Cir. 1998) (table decision). The terms here are clear and unambiguous. Plaintiff has "release[d] and forever discharge[d]" Headstrong from all claims which he "ever had, now ha[s], or which may arise in

the future, regarding any matter arising on or before the date of" the agreement. Agreement at 2.[4] Absent some defense to its enforcement, the Court finds that the agreement bars Plaintiff's claims in this case.

## II. Validity of the Agreement

Although Gupta does not dispute that he signed the May 2008 agreement, he purports to have unilaterally rescinded it by email on February 11, 2010, on the basis that Headstrong misrepresented whether and when it notified USCIS of his termination. *See* Compl. at 15; Dkt. 1-1 at 18; Admin. Record, Dkt. 64-83 at 39. In the email, Plaintiff implies that he only signed the agreement because he was relying on Headstrong's statement that it had informed USCIS about his separation from the company, and on the company's alleged statements that it would refuse to pay him wages otherwise. Plaintiff asserts that such conduct amounted to a misrepresentation of material facts and duress. He also asserts that the agreement was unenforceable for other reasons, such as lack of consideration.

A release of claims such as the one contained in the agreement "is a jural act of high significance without which the settlement of disputes would be rendered all but impossible." *Mangini v. McClurg*, 249 N.E.2d 386, 390 (N.Y. 1969). A release "should never be converted into a starting point for renewed litigation except under circumstances and under rules which would render any other result a grave injustice." *Id.* For example, a release may be invalid "when fraud, duress, illegality, or mutual mistake is shown." *Levine*, 1998 WL 386141, at *2. Notably, however, even at the motion-to-dismiss stage, once a defendant demonstrates the existence of a clear and unambiguous signed release, the burden shifts to the plaintiff to establish some cause "sufficient

---

[4] Plaintiff demands some wages that he asserts he is owed from periods that fall after the agreement, *see, e.g.*, Compl. at 20, 29, 36, but from the allegations it is clear that all agreements which allegedly gave rise to such obligations were made before the settlement, *see id.* at 7, 12.

to void the release." *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 952 N.E.2d 995, 1000 (N.Y. 2011); *see also Interpharm Inc., v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011). To do so, a plaintiff must plausibly allege "the basic elements" of that cause. *See Centro Empresarial Cempresa S.A.*, 952 N.E.2d at 1000 (internal quotation omitted). In other words, "[u]nless the Complaint sufficiently states a claim to void the release agreement[] . . . [the agreement is] enforceable and compel[s] dismissal of all claims." *2 Broadway L.L.C.*, 2001 WL 410074, at *7.

The Court first turns to Plaintiff's assertion that the agreement lacked proper consideration. "Under New York law, consideration is a necessary ingredient for an enforceable contract." *Ferguson v. Lion Holdings, Inc.*, 312 F. Supp. 2d 484, 494 (S.D.N.Y. 2004) (internal quotation omitted). Consideration, however, "is simply a bargained-for exchange of promises or performance" and parties are generally "free to make their own bargains" so long as they are not fraudulent or unconscionable. *Id.* The consideration here—a $7,000 lump sum and a general release of claims in exchange for a similar release of claims—was a valid exchange. While a release "is not effective unless the party giving the release receives something of value to which the party was not otherwise entitled," *Chaput v. Unisys Corp.*, 964 F.2d 1229, 1301 (2d Cir. 1992)—and Plaintiff can plausibly argue that he was entitled to the $7,000, *see* Dkt. 1-4 at 38 n.60—a "mutual release provides sufficient consideration" for a general release, *Lamberston v. Kerry Ingredients, Inc.*, 50 F. Supp. 2d 163, 169 (E.D.N.Y. 1999). Additionally, the agreement explicitly states that Plaintiff agreed "that the consideration listed . . . is sufficient consideration for the release being given by you." Agreement at 4. And the "adequacy" of that consideration (rather than its legal sufficiency) "is not a proper subject for judicial scrutiny." *Apfel v. Prudential-Bache Sec. Inc.*, 616 N.E.2d 1095, 1097 (N.Y. 1993).

Although allegations of duress or fraud can prevent dismissal at this stage if sufficiently stated, Plaintiff's allegations cannot prevent the agreement from barring his claims because they fail on the face of the complaint and the incorporated materials.[5] As to the fraud argument, his contention that Headstrong made misrepresentations that should release him from the agreement are inadequate. Even when his materials are viewed generously, Plaintiff does not plausibly allege that Headstrong knew its claim about notifying USCIS was false, let alone that Plaintiff justifiably relied on that fact when agreeing to the settlement with the assistance of counsel, or that Plaintiff's alleged injuries resulted from the purported misrepresentation. *See* Admin. Record, Dkt. 64-83 at 39.[6] *See Centro Empresarial Cempresa S.A.*, 952 N.E.2d at 1000 (requiring "a representation of material fact, the falsity of that representation, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury").

Plaintiff's allegations of duress also fall short. Under New York law, a party seeking to establish economic duress "shoulders a heavy burden" and must demonstrate that an unlawfully made threat caused involuntary acceptance of terms because the circumstances permitted no alternative. *Orix Credit. All. v. Bell Realty, Inc.*, No. 93-CV-4949 (LAP), 1995 WL 505891, at *4 (Aug. 23, 1995) (internal quotations omitted); *see also 2 Broadway L.L.C.*, 2001 WL 410074, at

---

[5] Mindful of Plaintiff's *pro se* status, the Court notes that even if by "misrepresentation of material facts," Plaintiff means to allege the defense of unilateral mistake, he has similarly failed to make sufficient allegations to prevent dismissal on that basis. *See NCR Corp. v. Lemelson Med., Educ. & Research Found.*, No. 99-CV-3017, 2001 WL 1911024, at *7 (S.D.N.Y. Apr. 2, 2001).

[6] Plaintiff's own exhibit also raises serious doubts about the substance of the allegations of misrepresentation, as it discusses the DOL's finding that a date stamp shows that Headstrong notified USCIS of Plaintiff's termination when it said it did, and in the appropriate manner. *See* Dkt. 1-4 at 33–34, 38. Thus, even if Plaintiff had adequately stated misrepresentation, this exhibit may preclude it as sufficient cause to void the release. *See Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (noting that if an incorporated document contradicts a plaintiff's allegations, "those allegations are insufficient to defeat a motion to dismiss"); *2 Broadway L.L.C.*, 2001 WL 410074, at *9 (same).

*7 ("Plaintiffs are wrong . . . to suggest that allegations of economic duress necessarily give them a right to discovery in the face of comprehensive release agreements which expressly and unambiguously bar[] all of a complaint's underlying claims."). Here, the fullest expression of potential duress comes in Plaintiff's February 11, 2010 rescission email, in which he claimed that he signed the agreement because of Headstrong's "unwillingness and refusal to pay my H-1B wages unless I sign." Admin. Record, Dkt. 64-83 at 39.[7] Even if that brief statement, read generously, approaches an adequate statement of economic duress to make the release voidable, Gupta did not actually void the agreement—he ratified it by retaining his lump-sum payment for the past ten years. *See VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 123 (2d Cir. 2001) ("A party may ratify a contract or release entered into under duress by intentionally accepting benefits under the contract[.]" (internal quotation omitted)). The ratification thus defeats the duress claim, as well as the fraud claim, even if they were plausibly alleged.[8] *See generally Weiss v. Phillips*, 157 A.D.3d 1, 12 (N.Y. App. Div. 2017).

Finally, Plaintiff's argument that his claims could not be resolved through private settlement is meritless, as he relies on precedent specific to settlements governed by the Fair Labor Standards Act, which is not at issue here. The Court has considered Plaintiff's assorted other arguments and finds them to be uniformly without merit. Accordingly, even at the motion-to-

---

[7] Gupta's other allegations of duress are even more sparse, alleging "corporate greed" and other wrongs by Headstrong. Dkt. 74 at 20. He asserts in his opposition to the motion to dismiss that he "need not allege additional facts to establish duress." *Id.* at 27. As noted above, the Court disagrees. *See 2 Broadway L.L.C.*, 2001 WL 410074, at *7.

[8] New York law provides a narrow exception for ratification "where during the period of acquiescence or at the time of the alleged ratification the disaffirming party is still under the same continuing duress." *Sosnoff v. Carter*, 165 A.D.2d 486, 492 (N.Y. App. Div. 1991). The court there found that a plaintiff need not repudiate the agreement until the duress has ceased. *Id.* Here, though Plaintiff makes reference to continued financial hardship, the alleged duress took place a decade ago and Plaintiff has not plausibly stated how it could have continued for such an extended period under the circumstances alleged. Plaintiff's reliance on *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998), is similarly of no avail, as the holdings of that case were specific to two statutes not at issue here.

dismiss stage, the face of Plaintiff's complaint and incorporated materials establish that Gupta has not plausibly alleged a valid basis for invalidation of the clear and unambiguous terms of the agreement. The Court thus sees no reason why the release does not constitute a valid, enforceable contract provision that bars the claims brought in this action.

### III. Leave to Amend

When a liberal reading of a *pro se* complaint "gives any indication that a valid claim might be stated," courts should grant leave to amend at least once. *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal brackets and quotation omitted). In light of the length of the materials Plaintiff has already submitted and the in-depth discussion of the agreement in his current complaint, the Court has serious doubts about Gupta's ability to make in good faith the allegations necessary to avoid dismissal. Plaintiff has not plausibly alleged fraud or duress, and many of his other defenses, such as lack of consideration, are not supported by New York law. Nevertheless, in light of his *pro se* status, the Court will grant Plaintiff one opportunity to amend, if he has a good faith basis to do so. As noted above, however, such allegations would need to adequately allege both why the agreement is voidable, and why his retention of the lump-sum payment for the past ten years did not ratify it.

### CONCLUSION

For the reasons stated above, the motion to dismiss is granted without prejudice and with leave to amend. If Plaintiff files an amended complaint, he must do so no later than April 30, 2018. If Plaintiff does not file an amended complaint, this action will be dismissed pursuant to Federal Rule of Civil Procedure 41(b). In light of Plaintiff's leave to amend, the Court will not rule at this time on the Headstrong Defendants' request for reasonable attorneys' fees based on the covenant not to sue. The Headstrong Defendants may renew their request at the appropriate time.

Additionally, all parties to this case are hereby ordered to appear via phone for a conference on the status of this matter on April 19, 2018 at 11:00 a.m.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 52.

SO ORDERED.

Dated: March 30, 2018
New York, New York

Ronnie Abrams
United States District Judge