USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/28/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARVIND GUPTA,

              Plaintiff,

        v.

HEADSTRONG, INC., GENPACT
LIMITED, and SECRETARY OF THE U.S.
DEPARTMENT OF LABOR,

              Defendants.

No. 17-CV-5286 (RA)

MEMORANDUM OPINION
& ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Arvind Gupta, proceeding *pro se*, brought this action against Defendants Headstrong, Inc. and Genpact Limited (collectively, "Headstrong") for wages allegedly owed to him under the H-1B provisions of the Immigration and Nationality Act and for judicial review, under the Administrative Procedure Act, of orders of the Department of Labor dismissing his administrative claims against Headstrong.  On September 9, 2019, the Court issued an Opinion and Order granting Headstrong's motion to dismiss, granting the Department of Labor's motion for summary judgment, and denying Gupta's motion for summary judgment.  Now before the Court are Gupta's motion for attorneys' fees and costs and Headstrong's motion for attorneys' fees.  For the reasons that follow, Gupta's motion is denied and Headstrong's motion is granted, subject to the modifications discussed below.

## BACKGROUND[1]

Familiarity with the facts and procedural history of this case is assumed.  The Court here provides only a brief overview of the factual and procedural background that is relevant to the instant motion.

In early 2006, Headstrong hired Gupta, a citizen of India, to work in the United States pursuant to an H-1B visa.  The H-1B visa program permits non-immigrant foreign workers to work temporarily in the United States in "specialty occupation[s]."  8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1182(n).  Headstrong filed a Labor Condition Application ("LCA") with the Department of Labor ("DOL"), and United States Citizenship and Immigration Services ("USCIS") approved Gupta's H-1B petition for a period of authorized employment running from April 24, 2006 until November 8, 2007.  Under the INA, an employer who hires a non-immigrant foreign worker pursuant to an H-1B visa is obligated to pay that employee a stipulated wage rate, which is specified in the LCA, for the entire period of authorized employment.  20 C.F.R. § 655.730(d); *see* 8 U.S.C. § 1182(n)(1)(A), (2)(C)(vii)(I).  This wage obligation applies even for periods of "nonproductive" time "due to a decision by the employer," though it does not apply if the employer effects a "bona fide termination" of the employee.  8 U.S.C. § 1182(n)(2)(C)(vii)(I), (IV); 20 C.F.R. 655.731(c)(7)(i), (ii).

On November 14, 2006, Headstrong notified Gupta that he would be terminated and, after November 28, 2006, it did not assign him any further work.  In December of 2006, Headstrong and Gupta entered into a severance agreement.  Then, in April of 2008, Gupta, who was counseled at the time, sent Headstrong a request for payment of further wages allegedly owed to him for the period of his authorized employment.  In May of 2008, Gupta and Headstrong entered into a

---

[1] Unless otherwise noted, the factual background is taken from the Amended Complaint.  Dkt. 93 ("Am. Compl.").

settlement and release agreement, which was notarized and signed by both parties.  Dkt 58-2 (the

"Settlement Agreement").  Pursuant to the Settlement Agreement, Headstrong agreed to pay Gupta

a lump sum payment of $7,000.  *Id.* ¶ 1.  In addition, Gupta and Headstrong agreed to a

comprehensive mutual release of claims.  *Id.* ¶¶ 3, 5, 11.  Pursuant to this release, Gupta agreed to

"release and forever discharge" Headstrong "of and from all . . . suits, actions, causes of actions,

charges, complaints, grievances, judgments, damages . . . which [he] ever had, now ha[s], or which

may arise in the future, regarding any matter arising on or before the date of [his] execution of"

the Settlement Agreement.  *Id.* ¶ 3.  He also agreed "not to sue or file a charge, complaint,

grievance, or demand for arbitration against" Headstrong "in any forum."  *Id.* ¶ 5.  The Settlement

Agreement further provided that Headstrong may recover attorneys' fees and any other damages

incurred as a result of Plaintiff Gupta breaching his obligations under the Settlement Agreement:

> In the event of a breach by You or any Releasor of any provision of this Agreement
> and Release, and without limiting in any way remedies available to the Company
> for such breach, You agree to indemnify and hold harmless the Releasees from and
> against any and all losses, liabilities, damages, and expenses, including reasonable
> attorneys' fees, that any Releasee may incur or suffer arising out of or in connection
> with any breach of a representation or agreement by You or any Releasor.

*Id.* ¶ 10.  In February of 2010, Gupta sent Headstrong an email purporting to rescind the Settlement

Agreement.

After entering into the Settlement Agreement, Gupta filed a complaint with the DOL

alleging that Headstrong had failed to pay him wages owed during the period of his authorized

employment.    After several years of back-and-forth within the DOL, and the resolution of a

separate action filed in this Court,[2] an Administrative Law Judge ("ALJ") issued a 40-page

---

[2] Gupta filed that action in August of 2012. *See Gupta v. Headstrong, Inc.*, 12-CV-6652 (RA). In December
of 2012, Gupta and the DOL entered into a stipulation and order of remand, in which the DOL agreed to
reconsider Gupta's administrative claims.  *See* Dkt. 23.  Headstrong, which was not a party to that
stipulation, filed a motion to dismiss the complaint, which the Court granted without prejudice in August
of 2013. *See Gupta v. Headstrong, Inc.*, 12-CV-6652 (RA), 2013 WL 4710388, at *4 (S.D.N.Y. Aug. 30,

decision and order addressing Gupta's claims.  Am. Compl. Ex. 4 at 2–41.  As relevant here, the ALJ determined that the applicable period of Gupta's authorized employment with Headstrong was April 24, 2006 until November 8, 2007, and that Headstrong had effected a bona fide termination of Gupta on February 2, 2007.  The ALJ thus concluded that Headstrong was obligated to pay Gupta wages through February 2, 2007, even though Gupta had stopped working for Headstrong on November 28, 2006.  The ALJ calculated the back wages Headstrong owed to Gupta, and subtracted the approximately $8,000 that Headstrong had already paid Gupta pursuant to the December 2006 severance agreement.  Accordingly, the ALJ concluded that Headstrong's back wage obligation to Gupta was approximately $11,500.  The ALJ then considered the May 2008 Settlement Agreement.  It concluded that Gupta's allegations of fraud had no merit, and that Headstrong's "obligation to pay him back wages, or benefits, or travel expenses of any kind, was completely extinguished by [Gupta's] execution of the settlement agreement and release, and the concomitant payment of $7,000.00."  *Id.* at 39.  The ALJ further noted that although the $7,000 lump sum payment was less than the $11,500 owed to Gupta, the settlement amount "represent[ed] a reasonable compromise" and was paid to Gupta within 45 days of his attorney's demand letter. *Id.* at 39 n.60.  Accordingly, the ALJ concluded that Headstrong did "not currently owe any back wages, or any other amount of money," to Gupta.  *Id.* at 41.

On January 26, 2017, the Administrative Review Board ("ARB") affirmed the decision and order of the ALJ, finding that "the extensive evidentiary record amply supports the ALJ's factual findings, including her determination that the parties' settlement and release of claims extinguished all claims against Headstrong."  Am. Compl. Ex. 2 at 4.  While declining to address Gupta's "collateral attacks" to the May 2008 Settlement Agreement, the ARB noted that the

---

2013).  After Gupta appealed the Court's decision and subsequent orders, the Second Circuit dismissed the appeal on March 11, 2015.  *See Gupta v. Headstrong, Inc.*, 14-3437 (2d Cir. March 11, 2015).

Agreement was "facially valid" and upheld the ALJ's decision as "consistent with ARB precedent." *Id.*  On February 14, 2017, the ARB denied Gupta's motion for reconsideration.

On March 16, 2017, Gupta commenced this action in the Northern District of Illinois.  His complaint principally alleged that Headstrong had breached its employment agreement with Gupta by failing to pay him all the wages it owed to him, and that the Secretary of Labor had erred in dismissing Gupta's claims.  The case was transferred to this Court in July of 2017.  The Secretary of Labor answered the complaint and Headstrong filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  On March 30, 2018, this Court granted Headstrong's motion, holding that the May 2008 Settlement Agreement was valid and barred Gupta's claims.  Dkt. 78. The Court granted Gupta leave to amend, while instructing him that his amended allegations "would need to adequately allege both why the agreement is voidable, and why his retention of the lump-sum payment for the past ten years did not ratify it." *Id*. at 10.

On June 25, 2018, Gupta filed the Amended Complaint, asserting six claims solely against Headstrong, and an additional 14 claims jointly against Headstrong and the Secretary.  Dkt. 93. The Secretary answered the Amended Complaint, Dkt. 101, while Headstrong informed the Court that it would rely on its previously-filed motion to dismiss, Dkt. 94.  Gupta then filed a motion for partial summary judgment.  Dkt. 111.  Headstrong filed a request, Dkt. 118, which the Court granted, Dkt. 122, to stay Gupta's summary judgment motion as it pertained to Headstrong pending the resolution of its motion to dismiss.  The Secretary, meanwhile, opposed Gupta's motion and cross-moved for summary judgment on all of Gupta's claims against the Secretary.  Dkt. 123.

On September 9, 2019, the Court issued an Opinion and Order granting Headstrong's motion to dismiss, granting the Department of Labor's motion for summary judgment, and denying Gupta's motion for summary judgment.  Dkt. 136 ("September 2019 Opinion").  As in its prior

March 30, 2018 Opinion and Order, the Court again held that the May 2008 Settlement Agreement was valid and enforceable, and that it barred Gupta's claims. *Id*. at 7-11. The Court further held that the DOL's decisions dismissing Gupta's claims against Headstrong were supported by substantial evidence and not arbitrary, capricious, or contrary to law. *Id*. at 12-13. After Gupta appealed the Court's decision, the Second Circuit dismissed the appeal on August 18, 2020. *See Gupta v. Headstrong Inc., et al.*, 19-3044 (2d Cir. Aug. 18, 2020).

On October 3, 2019, Headstrong filed a motion for attorneys' fees, Dkt. 143, which Gupta opposed on December 9, 2019, Dkt. 165, and which Headstrong replied in support of on December 23, 2019, Dkt. 168. On December 2, 2019, Gupta filed his own motion for attorneys' fees, Dkt. 159, which Headstrong opposed on December 16, 2019, Dkt. 166, and which Gupta replied in support of on December 24, 2019, Dkt. 169. On September 23, 2020, in response to a Court Order, Headstrong filed a revised version of its billing records with fewer redactions, as well as information about the experience of the attorneys for whom it seeks fees. Dkt. 176.

## DISCUSSION

### I.    Gupta's Motion for Attorneys' Fees

Gupta moves for $2,333.33 in attorneys' fees related to the May 2008 settlement negotiations with Headstrong, during which time he was represented by counsel. Dkt. 160 ("Pl. Mem.") ¶¶ 19-20. Headstrong argues that Gupta lacks any statutory or contractual grounds for his motion for fees. *See* Dkt. 166 ("Headstrong Opp'n") at 4 ("Gupta has not pointed to a single statute, court rule or any provision in an agreement between the parties which would allow him to collect the Attorneys' Fees from the Headstrong Defendants."). For the reasons that follow, the Court agrees.

The "'basic point of reference' when considering the award of attorney's fees is the bedrock principle known as the 'American Rule': Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Peter v. Nantkwest, Inc.*, 140 S. Ct. 365, 370 (2019) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–253 (2010)).  In other words, under the American Rule, "the presumption against fee shifting applie[s] by default." *Id.* at 371.  "[T]he American Rule presumption is most often overcome when a statute awards fees to a 'prevailing party.'" *Id.* at 371.  That said, "Congress has indeed enacted fee-shifting statutes that apply to nonprevailing parties" and "the American Rule applies to such statutes." *Id.*  "New York follows the "American Rule" on the award of attorneys' fees." *Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 241 (S.D.N.Y. 2011).

Gupta's claims in this action arise under state contract law and under the Immigration and Nationality Act (INA) and its implementing regulations. *See* Am. Compl. at 13-57.  Gupta argues that a provision of the INA, 8 U.S.C. § 1182(n)(2)(C)(i)(I), which authorizes the Secretary to "impose such other administrative remedies (including civil monetary penalties in an amount not to exceed $1,000 per violation) as the Secretary determines to be appropriate," supports the proposition that he is entitled to attorneys' fees here.  Pl. Mem. ¶ 6.  Gupta fails, however, to identify any cases holding: (1) that this provision of the INA authorizes the Secretary to award attorneys' fees, (2) that this provision of the INA authorizes a court to award attorneys' fees, or (3) assuming this provision of the INA does, in fact, authorize a court to award attorneys' fees, that such fees are available even where, as here, the plaintiff's claims were denied and his complaint was dismissed.

"To determine whether Congress intended to depart from the American Rule presumption, the Court first 'look[s] to the language of the section' at issue." *Peter*, 140 S. Ct. at 372 (quoting

*Hardt*, 560 U.S. at 254).  "While the absence of a specific reference to attorney's fees is not dispositive, Congress must provide a sufficiently specific and explicit indication of its intent to overcome the American Rule's presumption against fee shifting."  *Id*. (internal quotation marks, citations, and brackets omitted) (holding provision of the Patent Act that requires applicants who file action in federal court to pay "[a]ll expenses of the proceeding," 35 U.S.C. § 145, does not overcome the American Rule's presumption against fee shifting to permit the Patent and Trademark Office to recover attorneys' fees).  As Congress provided no such "specific and explicit indication of its intent to overcome the American Rule" in 8 U.S.C. § 1182(n)(2)(C)(i)(I), the Court finds that provision does not defeat the presumption that each litigant must pay his own attorneys' fees.

Gupta cites the ARB's decision in *Delcore v. W.J. Barney Corp.*, ARB No. 96-161, ALJ No. 1989-ERA-038 (ARB Oct. 31, 1996) for the proposition that fees and costs are available here. Pl. Mem. ¶ 6.  *Delcore*, however, involved violations of the Energy Reorganization Act of 1974 ("ERA"), which provided at the time that if the Secretary of Labor found a violation of the Act, it "shall assess against the person against whom the order is issued a sum equal to the aggregate amount of all costs and expenses (including attorneys' and expert witness fees) reasonably incurred, as determined by the Secretary, by the complainant for, or in connection with, the bringing of the complaint upon which the order was issued."  *Blackburn v. Reich*, 79 F.3d 1375, 1377 (4th Cir. 1996) (quoting 42 U.S.C. § 5851(b)(2)(B)).  In contrast to that provision of the ERA, Gupta's cited provision of the INA, 8 U.S.C. § 1182(n)(2)(C)(i)(I), does not contain any statutory language providing for attorneys' fees or otherwise indicating Congress's intent to overcome the American Rule.

Gupta's claims against Headstrong are also distinct from immigration-related fee-shifting cases brought under the Equal Access to Justice Act (EAJA), which permits a prevailing party in an "adversary adjudication" before an administrative agency to recover fees from the Government. 5 U.S.C. § 504(a)(1); *see also Ibrahim v. U.S. Dep't Homeland Sec.*, 912 F.3d 1147 (9th Cir. 2019) (allowing EAJA fee-shifting for a procedural due process claim related to denial of a visa). Here, Gupta seeks fees against Headstrong, a private entity, rather than the Government. In any event, for the reasons described below, Gupta is not a prevailing party.

Moreover, Gupta is not entitled to attorneys' fees pursuant to the parties' May 2008 Settlement Agreement. As described above, the Settlement Agreement provided:

> In the event of a breach by You or any Releasor of any provision of this Agreement and Release, and without limiting in any way remedies available to the Company for such breach, You agree to indemnify and hold harmless the Releasees from and against any and all losses, liabilities, damages, and expenses, including reasonable attorneys' fees, that any Releasee may incur or suffer arising out of or in connection with any breach of a representation or agreement by You or any Releasor.

May 2008 Agreement ¶ 10. The Settlement Agreement defines "Releasors" to include Gupta, and his heirs, privies, executors, administrators, assigns, successors-in-interest, and predecessors-in-interest, and defines "Releasees" to include Headstrong and its parent organizations, affiliates, subsidiaries, predecessor organizations, successors, assigns, present or former directors, shareholders, partners, members, officers, employees, and agents. *Id*. ¶ 3. The Settlement Agreement thus unambiguously provides that Headstrong may seek fees in the event of Gupta's breach, but includes no parallel provision enabling Gupta to seek fees.

In sum, neither the INA nor the parties' May 2008 Settlement Agreement provides that Gupta is entitled to seek attorneys' fees from Headstrong. The Court thus holds that the American Rule presumption applies, and Gupta is not entitled to recover attorneys' fees.

## II.   Gupta's Motion for Costs

Gupta also seeks $2,099.28 in costs associated with the May 2014 ALJ hearing, $1,244 in other costs related to the litigation filed in 2012, $540 in costs related to his appeal in that case, and $1,410 in costs related to this litigation.  Dkt. 160 ("Pl. Mem.") ¶¶ 18, 21-25.  In total, Gupta seeks $5293.28 in costs.  *Id.*  Headstrong argues that Gupta is not entitled to costs because he is not a prevailing party.  Headstrong Opp'n at 2-3.  Once again, the Court agrees.

Fed. R. Civ. P. 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Gupta, citing *Roadway Exp., Inc. v. Admin. Review Bd.*, 6 F. App'x 297 (6th Cir. 2001), argues that because the ALJ found that Headstrong had engaged in an H-1B violation, he does not need to prove that he is a prevailing party in order to receive reimbursement for costs.  Pl. Mem. ¶ 8; *see also* Dkt. 169 ("Pl. Reply") ¶ 2 (citing *Roadway Express* for the proposition that "in administrative cases costs are assessed against the party found to be in violation of the statute").  In *Roadway Express*, however, the Sixth Circuit analyzed attorneys' fees and costs under a different statutory scheme, the Surface Transportation Assistance Act ("STAA"), which the court held is not governed by the prevailing party doctrine.  *See Roadway Exp.*, 6 F. App'x at 301.  The case does not stand for the general proposition that parties found in violation of *any* statute owe attorneys' fees and costs, and explicitly distinguishes the STAA from fee-shifting statutes that use the prevailing party standard.  *See id.*

Gupta also argues that in any event, he is the prevailing party.  *See* Pl. Mem. ¶¶ 10-12.  The Court disagrees.  A party is a prevailing party "if there is a 'judicially sanctioned change in the legal relationship of the parties' favoring it, including an 'enforceable judgment[t] on the merits.'"  *Megna v. Biocomp Labs., Inc.*, 225 F. Supp. 3d 222, 224 (S.D.N.Y. 2016) (quoting *CRST Van*

10

*Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1646 (2016)).  "The prevailing party is one who 'succeeds on a significant issue in the litigation.'"  *Id*. (quoting *Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d. Cir. 1989)).

Although, as described above, the ALJ found that Headstrong owed back wages of approximately $11,500, she determined that "Headstrong's "obligation to pay him back wages, or benefits, or travel expenses of any kind, was completely extinguished by [Gupta's] execution of the settlement agreement and release, and the concomitant payment of $7,000.00."  Am. Compl. Ex. 4 at 39.  The ALJ further noted that although the $7,000 lump sum payment was less than the $11,500 owed to Gupta, the settlement amount "represent[ed] a reasonable compromise" and was paid to Gupta within 45 days of his attorney's demand letter.  *Id.* at 39 n.60.  Accordingly, the ALJ concluded that Headstrong did "not currently owe any back wages, or any other amount of money," to Gupta.  *Id.* at 41.  The ARB affirmed the decision and order of the ALJ, finding that "the extensive evidentiary record amply supports the ALJ's factual findings, including her determination that the parties' settlement and release of claims extinguished all claims against Headstrong."  Am. Compl. Ex. 2 at 4.  Similarly, this Court held that "the May 2008 Agreement unambiguously released the claims that Gupta asserts against Headstrong in this case" and upheld the Department of Labor's decision concluding that the parties had settled Headstrong's wage obligation and released Gupta's claims.  September 2019 Opinion at 11-13.

Gupta thus plainly did not obtain a "'judicially sanctioned change in the legal relationship of the parties' favoring it, including an 'enforceable judgment[t] on the merits.'"  *Megna*, 225 F. Supp. 3d at 224 (quoting *CRST Van Expedited, Inc.*, 136 S. Ct. at 1646).  Gupta sought back wages, and his efforts failed, as Headstrong and Gupta are in the same position they were when this

litigation began. Namely, their Settlement Agreement remains in place and Headstrong owes no further wages to Gupta. The Court thus concludes that Gupta is not entitled to costs.

### III. Headstrong's Motion for Attorneys' Fees

Headstrong also seeks attorneys' fees, in the amount of $210,163.00. Dkt. 144 ("Headstrong Mem.") at 1. Headstrong only seeks reimbursement for attorneys' fees incurred in relation to Plaintiff's claims in federal court and does not seek fees in connection with the administrative proceedings. *Id.*, *see also* Dkt. 145 ¶ 5; Dkt. 176 at 1. Headstrong contends that Gupta breached the Settlement Agreement's covenant not to sue, and that it is therefore entitled to fees pursuant to the Agreement's fee-shifting provision. ("Headstrong Mem.") at 1. For the reasons that follow, the Court agrees that Headstrong is entitled to fees, yet finds the amount of Headstrong's requested fee award unreasonable.

As described above, under the American Rule, there is a presumption that each party is responsible for its own attorneys' fees unless a statute or contract provides otherwise. *See Local 1180, Communications Workers of America, AFL-CIO v. City of New York*, 392 F.Supp.3d 361, 377 (S.D.N.Y. 2020). The American Rule provides that "parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." *Id.* (citing *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004)). "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." *NetJets Aviation, Inc. v. LHC Communications, LLC,* 537 F.3d 168, 175 (2d Cir.2008). In other words, "the rule in New York is that when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have

12

been expended by the prevailing party, so long as those amounts are not unreasonable." *Diamond D Enterprises USA, Inc. v. Steinsvaag,* 979 F.2d 14, 19 (2d Cir.1992). Thus, in addressing a contractual claim for attorneys' fees, a court must determine what constitutes "a reasonable amount of fees." *McGuire v. Russell Miller, Inc.,* 1 F.3d 1306, 1313 (2d Cir.1993).

For the reasons expressed in the Court's September 9, 2019 Opinion and Order, the May 2008 Settlement Agreement is valid and enforceable under New York law and unambiguously released Headstrong from the claims that Gupta asserts in this case. September 2019 Opinion at 7-11. By filing this action in contravention of his sworn agreement to "release and forever discharge" Headstrong "of and from all . . . suits," as well as his agreement "not to sue or file a charge, complaint, grievance, or demand for arbitration against" Headstrong "in any forum," Gupta plainly breached the Settlement Agreement. Settlement Agreement ¶¶ 3, 5.

The Court's analysis regarding the validity of the Settlement Agreement extends to the validity of its fee-shifting provision, which the Court finds enforceable because it is "sufficiently clear." *NetJets Aviation, LLC,* 537 F.3d at 175. That provision unambiguously states that should Gupta "breach" any provision of the Agreement, he agrees to "indemnify and hold harmless the Releasees from and against any and all losses … including reasonable attorneys' fees, that any Releasee may incur or suffer arising out of or in connection with any breach." Settlement Agreement ¶ 10. Gupta argues that this provision is inapplicable because Headstrong never filed a counterclaim for breach of contract. Dkt. 165 ("Pl. Opp'n") ¶ 7. Yet the relevant inquiry here is whether a party breached a contractual fee provision that is valid under state law, not whether Headstrong counterclaimed for breach of contract or proved damages. *Local 1180*, 392 F.Supp.3d at 377. Because Gupta's breached the May 2008 Settlement Agreement by filing the two related

federal actions against Headstrong, the Court holds that Headstrong is entitled to collect attorneys'

fees pursuant to the parties' valid May 2008 Settlement Agreement.

The Court finds, however, that Headstrong's request for $210,163.00 in attorneys' fees is

unreasonable.  Under the law of this Circuit:

> In determining the reasonableness of attorneys' fees in the context of a contractual claim, a court examines a variety of factors, including "the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged . . . for similar services; and the amount involved."

*HSH Nordbank AG New York Branch v. Swerdlow*, No. 08 CIV. 6131 (DLC), 2010 WL 1141145,

at *6 (S.D.N.Y. Mar. 24, 2010) (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d

1250, 1263 (2d Cir.1987), *aff'd sub nom. HSH Nordbank AG New York Branch v. St.*, 421 F. App'x

70 (2d Cir. 2011).  "It is also appropriate for a court to consider the amount of fees requested in

relation to the amount of damages at stake in the litigation." *Vista Outdoor Inc. v. Reeves Family*

*Tr.*, No. 16 CIV. 5766, 2018 WL 3104631, at *4 (S.D.N.Y. May 24, 2018) (citing *Swerdlow*, 2010

WL 1141145, at *6).  "Counsel are, of course, required to present detailed contemporaneous billing

records.  The court is not, however, required to 'set forth item-by-item findings concerning what

may be countless objections to individual billing items.'"  *Swerdlow*, 2010 WL 1141145, at *6

(quoting *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994)).  "At the end of the day, "[t]he

presumptively reasonable fee boils down to what a reasonable, paying client would be willing to

pay, given that such a party wishes to spend the minimum necessary to litigate the case

effectively.'" *Vista Outdoor*, 2018 WL 3104631, at *4 (quoting *Simmons v. New York City Transit*

*Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)).  "Ultimately, '[w]here a district court has awarded

attorneys' fees under a valid contractual authorization, . . . it has broad discretion in doing so, and

an award of such fees may be set aside only for abuse of discretion.'" *Swerdlow*, 2010 WL

1141145, at *6 (quoting *In re Goldstein*, 430 F.3d 106, 110 (2d Cir. 2005)).

Here, a number of factors point to the unreasonableness of Headstrong's requested fees. As an initial matter, the damages at stake in this action were just a fraction of the fees that Headstrong now seeks. New York courts "'will rarely find reasonable an award to a plaintiff that exceeds the amount involved in the litigation.'" *Antidote Int'l Films, Inc. v. Bloomsbury Pub., PLC*, 496 F. Supp. 2d 362, 364 (S.D.N.Y. 2007) (quoting *F.H. Krear & Co.*, 810 F.2d at 1254). "However, the amount 'involved' in the litigation is not the amount actually recovered but instead the 'amount reasonably in controversy in a litigation.'" *Vista Outdoor Inc.*, 2018 WL 3104631, at *5 (quoting *Diamond D. Entes. USA, Inc.*, 979 F.2d at 19-20). Although Gupta sought a range of compensatory damages in addition to punitive damages, Am. Compl. at 39-43, the ALJ found that Headstrong owed Gupta approximately $11,500 in back wages—just $4,500 more than the $7,000 Headstrong had already paid Gupta pursuant to the May 2008 Settlement Agreement. Am. Compl. Ex. 4 at 39. The ALJ's calculation reflects that the damages "reasonably in controversy" in this action pale in comparison to the $210,163.00 that Headstrong expended on its attorneys' fees. *Vista Outdoor Inc.*, 2018 WL 3104631, at *5. The Court thus reduces Headstrong's requested fee award by thirty percent.

In addition, the Court finds that this action did not involve any particularly difficult questions, and accordingly that no unique degree of skill was required to defend the action. *See F.H. Krear & Co.*, 810 F.2d at 1263. Rather, defending this action involved applying basic principles of contract law, given that Gupta had signed an unambiguous release of his claims. The Court thus reduces Headstrong's requested fee award by an additional twenty percent, for a total reduction of fifty percent.

The Court nonetheless finds that some of the factors identified above favor the reasonableness of Headstrong's requested fee award. In particular, defending this action, the prior

15

related action Gupta filed in 2012, *see Gupta v. Headstrong, Inc.*, 12-CV-6652 (RA), and the Second Circuit appeals required a significant expenditure of time and labor over eight years. The time and effort required to litigate these cases was compounded by the fact that Gupta filed an unusually high number of motions, many of which the Court denied, and some of which were frivolous. *See* Headstrong Mem. at 3; Dkt. 145-1 (listing 23 motions Gupta has filed).

Finally, the Court finds that the rates charged by Headstrong's counsel, Jackson Lewis, are reasonable in light of the firm's significant experience defending companies in labor disputes. Courts in this district have recognized Jackson Lewis as "a nationwide management-side law firm with a well-known and respected employment and labor law practice." *Bryant v. Potbelly Sandwich Works, LLC*, No. 17-CV-07638(CM)(HBP), 2020 WL 563804, at *6 (S.D.N.Y. Feb. 4, 2020). Headstrong's lead attorney from Jackson Lewis, Dana Glick Weisbrod, graduated from law school in 2004. *See* Dkt. 176 at 2. Her requested hourly fees range from $400 for work performed in 2012, when she was eight years out of law school, to $480 for work performed in 2019, when she was fifteen years out of law school. *See* Dkt. 176-1 ("Billing Records") at 2, 117. In light of Ms. Weisbrod's experience, the Court finds these proposed rates reasonable when compared to the rates courts have approved for attorneys with comparable experience at commercial firms in this district. *See, e.g.*, *Vista Outdoor Inc.* 2018 WL 3104631, at *6-7 (awarding 2016 rate of $633 to associate who was seven years out of law school and 2018 rate of $693.75 to associate who was fifteen years out of law school at a large commercial law firm). The Court thus declines to further modify Headstrong's requested fee award.

In sum, the Court concludes that Headstrong is entitled to half its requested attorneys' fee award—or $105,081.05—to compensate it for the eight years its attorneys have litigated this and related actions.

16

## CONCLUSION

For the foregoing reasons, the Court denies Gupta's motion for attorneys' fees and grants

Headstrong's motion, subject to the modifications discussed above.   The Clerk of Court is

respectfully directed to terminate the motions pending at Docket Entries 143, 159, and 162.

SO ORDERED.

Dated:    September 28, 2020
          New York, New York

                                                    Ronnie Abrams
                                                    United States District Judge